IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
LEON STANTON,                         :
       Plaintiff                      :
                                      :
     V.                               :
                                      :  NO :
                                      :
DAVID PAUL, Northeast Regional        :
Director, Michael Corvajol,           :
Bureau Director, Scott Finley,        :
Warden, M.Klobe, SIS, Lt. Keeney,
SIS, D.Trojan, SIS, R.Price, SIS,
J.Menne, A.Kroker, Lieu, T.Bartholomew,
Dr.Murray, Psychology, Andruzzi, Med.Nurse
Secretary, E.Spotts, Staff Member,
J.Barrett, SHU Lieutenant, A.Jordan
DHO, Lt. Foura, Lt. Bardo,
       Defendants
```

FILED
HARRISBURG, PA
MAY 0 2 2022
PER _____
DEPUTY CLERK

COMPLAINT

Statement of Claim:

Plaintiff, Leon Stanton, files this complaint pursuant to Section 1983 of 42 U.S.C. and sues the above defendants in their individual, official and unofficial capacity.

Section 1983 provides remedies for deprivations of rights established in the Constitution or by federal law. To state a claim under 1983 a plaintiff must demonstrate the defendant acting under the color of state law deprived him of a right secured by the Constitution or the laws of the United States. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3rd. Cir. 2006)

HIRA Educ. Servs N.AM v. Augustine, 991 F.3d 180 (2020) held that the question of whether any individual is entitled to immunity rests upon whether the individual(s) engaged in legitimate activities while in the course and scope of their position and authority.

Qualified immunity shields officials from civil liability insofar as their conduct does not violate clearly established statutory or Constitution-based rights of which a person would have known.

When analyzing a qualified immunity claim we consider 1) Whether the plaintiff sufficiently alleged the violation of a Constitutional right, 2) Whether the right was clearly established at the time of the official's conduct. L.R. v. Sch Dist. Of Phila, 836 F.#d 235, 241 (3rd Cir. 2016)

**Retaliation:**
To state a plausible First Amendment retaliation claim a prisoner must allege 1). he engaged in Constitutionally protected conduct 2). He has suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his Constitutional rights and 3). The conduct Constitutionally protected was a substantial or motivation factor for the adverse action. Mitchell v. Horn, 318 F.3d 523 (3rd Cir. 2003), Rauser v. Horn, 241 F.3d 330 (3rd Cir. 2001).

A prisoner's filing of a lawsuit or grievance constitutes Constitutionally protected conduct. Allah v.Seiverling, 229 F.3d 220 (3rd Cir. 2000) 1).To retaliation claim. Being placed in lockdown being moved to restricted housing and being issued misconducts charges are more than de minimis adverse. McKee v. Hart, 436 F.3d 165 (3rd Cir.2006).

The timing of the allegedly retaliatory behavior relative to the Constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.

Because there is not a bright line rule for the time that may pass between the protected speech and what constitutes actionable retaliation on or against a prisoner.Concord v. Pa. State Police, 902 F.3d 178 (3rd Cir. 2018). The Third Circuit has allowed time attenuated retaliation claims to proceed to discovery where there is a pattern of antagonism that sheds light on the timing of events enough to justify an inference of causation.

**FACTUAL STATEMENT:**

Leon Stanton, an inmate currently incarcerated at USP Allenwood files this Civil Action under 42 U.S.C. 1983 for a violation of his rights under the Constitution following incidents which occurred at FCI-Schuylkill.
On August 10th, 2020 the Plaintiff was placed in the SHU for an incident in which the plaintiff sent his wife an email. The email informed his wife in the event of a lockdown at the institution, to still move forward with having the sheriff serve the Warden, Scott Finley, with the complaint the plaintiff was filing against him.

1

On the same day, SIS M.Klobe prepared an incident report which stated that the Plaintiff based on the email, violated BOP Policy Code 196 and was officially sent to the Plaintiff on August 07, 2020. See Exhibit 1

On August 17, 2020 the Schuylkill County Sheriffs Dept. at the behest of the Schuylkill County Prothonotary served Warden Finley a complaint. The SIS Dept., at the institution, seized the complaint and submitted it as evidence.

On or about September 16, 2020 U.S. Attorney Samuel Dalke determined that no crime was committed and filed a motion to remove the complaint from the Schuylkill Sheriff Dept. and placed the complaint in the Federal Court.

The institution referred the complaint to the U.S. Attorney to determine if a crime was committed. Once the U.S. Attorney determined that no crime was committed, the basis of the incident report issued on August 10th, 2020 was voided. The plaintiff was continued to be held in the SHU without any explanation or valid reason.

On November 04, 2020 the Plaintiff was issued a second incident report which stated that the Plaintiff violated BOP Policy Code 203 and 204. The basis of the incident report issued on November 04, 2020 was the same email sent as mentioned in the first incident report issued on August 10, 2020.

PerBOP Policy whenever an incident report is prepared the inmate is to be provided with a copy. Then he is to be seen by the UDC Unit Team. Disciplinary committee within 5 days is to review the incident report to determine if there is a possible resolution at this stage. Once this review takes place the matter is then referred to the DHO to be resolved.

In response to the initial report issued on August 10, 2020 it was established that no crime was committed and the incident report had no basis to stand on. In the alternative, the Plaintiff was issued a second incident report and never received any type of sanction or review by the UDC for any of the incident reports.

While being held in the SHU over the course of 11 months the Plaintiff received several incidents reports for incidents which occurred in the SHU.

The Plaintiff, as a result of the initial placement in the SHU has been subjected to approximately 11 months in the SHU in retaliation to his filing of a complaint in the Schuylkill County

Courts. As the Sheriff attempted to serve Warden Finley, SIS intercepted the complaint and placed it into evidence.

The Plaintiff has a Constitutional right to file and have the Sheriff serve a complaint against a moving party. The action of SIS obtaining the complaint during the attempted service obstructed the process and hindered the Plaintiff's attempts to properly serve his complaint as required by Pa.Rules of Court. Legitimate filings have been held to be Constitutionally protected conduct. See: **Allah v. Seiverling**, 229 F.3d 220 (3rd Cir. 2000).

Upon the Plaintiff informing his family to continue to file his complaint was not in any way an unlawful act as supported by the U.S. Attorney's decision to forgo criminal charges. And further supported by the initial and second incident report issued for the basis of sending the email never being addressed by UDC Team nor any type of sanction imposed by a DHO.

The continued placement of the Plaintiff in the SHU lead to a continued pattern of incident reports issued based on the Plaintiff attempt to have his complaint served in the event the institution was placed on Covid lockdown which placed an adverse action on the Plaintiff.

Being placed in lockdown and move to a restricted housing area and being issued misconduct charges are more than de minimis adverse.See: **McKee v. Hart**, 436 F.3d 165 (3rd Cir. 2005).

The timing of the allegedly retaliatory behavior relative to the Constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.

The Plaintiff request that the Court Check the Camera Footage for the incidents in question.

- ❖ 8-10-2020 Apprx 11 am placed in SHU
- ❖ 9-18-2020 Staff member Lieu was bringing me back in from rec and made sexually derogatory comments when I expressed my discomfort by the way his hand was resting on my ass. Apprx 11 am-11:20 am
- ❖ 11-19-2020 Staff members A. Kroker, J. Menne, G. Sports and SHU Lt. Barrett trashed my cell and Spotts is seen on camera coming out with my legal work in a trash bag.
- ❖ 11-23-2020 SHU Lt. Barrett, Staff member J.Menne, T. Bartholomew took me to the bling spot where Lt. Barrett rammed my head into the back of the holding cage while I was cuffed for wanting to see someone about Staff Kroker threatening to break my neck and

3

    calling me a nigger for reporting his harassment against me psychologically.
- 11-05-2020 Appx 2pm, SIS D. Trojan opened my legal mail Outside of my presence and threw it through the food slot and then locked it. BOP policy states that legal mail must be opened in the presence of an inmate.
- 2-11-2021, SIS Klobe delivered legal mail and called me a terrorist because of my religion saying that because of me filing on Warden Finley February 26, 2021 Staff member Lieu inappropriately rubbed my ass digging in my back pocket.
- 2-26-2021 Staff member Lieu at Approx 6:35 a.m. dug his hand in my back pocket during a search, rubbing my ass to degrade me. I file a PREA complaint which doctor Menning covered up Lieu's action. However digging in my pockets is against protocol.
- 3-01-2021 Staff member A. Kroker retaliated against me for filing a PREA complaint on Lieu by sexually harassing me with an unwarranted strip-search and homosexual comments that stated "what you gonna file a PREA on me like you did Lieu pussy". Lieutenant Barlett lied and said I threatened him and had me placed in restraints to assist in justifying covering this up.
- During the time I was placed in restraints Lt. Four continually harassed me during his two-hour checks. He called me nigger, pussy, and he said he wish I would say anything so he can get a "free kill". During one check-in he had a staff member bring the riot shield which he used and pressed it on my head and banged on it with his fist. Every time he came in I ignored him which aggravated him more. In an attempt to cover up his actions he wrote me up seven times. DHO Jordan assisted in covering these actions up when I told him that Lt. Foura violated protocol policy by not having the camcorder to justify his use of the riot shield. I was in restraints so it was not in immediate need of the shield without getting the camera to use the shield to assault me. All this is the retaliation I have been subjected to.

  To be clearly established a right must be so apparent that every reasonable official would understand that what he is doing is unlawful and itself. <u>James v. NJ State Police</u>, 957 F.3d 165, 169 (3rd Cir. 2020)

  Exhaustion requirement under the PLRA - Prison Litigation Reform Act mandates that an inmate exhaust "such administration remedies as are available before bringing suit to challenge to prison conditions or matters related to the such". <u>Ross v. Blake</u>, <u>578</u> <u>U.S.</u> <u>1174</u>, <u>136</u> <u>S.Ct</u> <u>1850</u>, <u>195</u> <u>L.ed</u> <u>117</u> <u>(2016)</u>

4

Exhaustion applies only when administration remedies are available Under certain circumstances a normally extant prison grievance policy is not truly an available remedy. Id.

This applies when the procedure operates as a simple dead end with officers unable or consistently unwilling to provide any relief to the aggrieved inmates. When the process is so opaque it becomes practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation the process is not an available remedy.

Prison Administration must also comply with the demands of the system. As soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement. Shifflett, 934 F. 3d 365

The BOP's inmate disciplinary procedures are codified at C.F.R. 541 and entitled discipline and special housing units. These procedures are intended to meet or exceed the Due Process requirements prescribed by the Supreme Court. Vonkahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994) Pursuant to these regulations staff shall prepare an incident report where there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. 541.5

Under the regulations an inmate ordinarily receives the incident report within 24 hours of staff becoming aware of the prisoner's involvement in the incident. Id. 541.5(a). The incident is then referred to the UDC for an initial review pursuant to 541.7.

The UDC review/hearing is ordinarily held within 5 work days after "the incident report" is issued. If the UDC finds that a prisoner has committed a prohibited act it may impose any of the available sanctions set forth in 28 C.F.R. 541.3 (Tables 1&2).

If the alleged violation is serious and warrants consideration for more than minor sanctions or involves a prohibited act listed in the greatest severity category the UDC must refer the matter to a DHO for a hearing.

A DHO 1 will only conduct a hearing on the incident report if referred by the UDC. 28 C.F.R. 541.8 An inmate will receive written

notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement.

If an inmate is found to have committed a prohibited act the DHO May impose any of the available sanctions. Finally, the written report or decision of the DHO will contain the following, 1). Whether the inmate was advised of his or her rights during the proceedings, 2). The evidence relied on by the DHO, 3). the DHO's finding of guilt or innocence, 4). The sanctions imposed and, 5). The reasons for the sanctions imposed,id. BOP program statement 5270.09 requires suspension of an incident report pending FBI investigation.

The BOP has established an administrative remedy program 28 C.F.R 542.10 through which an inmate may seek review of issues or submit complaints relating to any aspects of his confinement. Inmates must first attempt to resolve the matter informally with prison staff. (BP-8). If informal resolution is unsuccessful the inmate must submit a written complaint (BP-9) to the warden within twenty calendar days of the events giving rise to the complaint.

If dissatisfied with the warden's response the inmate may then appealed to the BOP regional director (BP-10) within twenty days. An inmate may not raise 28 C.F.R. 542.15(b)(2). If the response of the regional director is not satisfactory the inmate may then appeal to the BOP's central office. (BP-11) Within 30 days. No administrative remedy appeal is considered fully exhausted until it is decided on its merits by the central office. C.F.R 542.15(a) and 542.18.

**DUE PROCESS**:

In order to determine whether a due process violation occurred an initial determination must be made as to whether Mr.Stanton was deprived of a liberty interest. As explained by the Third Circuit a protected liberty interest can arise either from the due process clause or from state law. **Mackey v. Smith**, 249 F.Appx 953, 954 (3rd. Cir.2007).

The due process clause protects an inmates right to freedom from restraint which while not exceeding the sentence in such an unexpected manner as to give rise to protection by the due process clause of its own force. Nonetheless imposes a typical and significant hardship on the inmate in relation to the ordinary incidents of prison life. **Sandin v. Conner**,515 U.S. 472, 115 S.Ct 2293, 132 L.ed 2d 418 (1995).

Therefore a liberty interest is confinement to which the inmate is subjected to is beyond the sentence imposed upon him or otherwise

6

violates this constitution. **Mitchell v. Dodrill**, 696 F.Supp. 2d 454 (M.D.Pa.2010)

The retaliatory actions of the Administration, officers included, is evident from the various incident reports issued and malicious action displayed towards the Plaintiff.

Prior to the Plaintiff moving to have the Warden served with the complaint the Plaintiff was designated to FCI Schuylkill which is a Medium Custody facility and had no history of any incident reports.

While being held in the SHU the Plaintiff received approximately 11 incident reports. The Plaintiff's placement in the SHU for investigatory purposes resulted in the 2 separate incident reports being issued which the Plaintiff never received any type of UDC review or DHO review therefore resulting in no type of sanction.

In a retaliatory manner the Plaintiff received several incident reports in the course of being held in the SHU. Of the approximate 11 incident reports the Plaintiff received He received sanctions for 7 of them, the remaining 4 were dismissed.

The Plaintiff has a Constitutional right to file a complaint pursuant to the rules that given filings in Local Courts. The Plaintiff's filings was rightfully permitted which was affirmed by the Sheriff of Schuylkill County attempting to serve the warden. The prison administration, SIS intercepted the filing and placed the complaint in evidence.

When an adverse action is the result of a person exercising his rights under our Constitution and done so with the intention to deter an ordinary person it rises to the level of retaliation for engaging in protected expression by filing a complaint in violation of the First Amendment.

The plaintiff being placed in the SHU for an incident report then held pursuant to a distinct and new incident report for the same incident which were both subsequently not pursued altered the Plaintiff's day-to-day ordinary prison life. **Sandin v. Conner**, 515 U.S. 472, 115 S.Ct 2293, 132 L.ed 2d 418 (1995)

A liberty interest is created only where the conditions or the degree of confinement which an inmate is subjected to are beyond the sentence imposed upon him. **Mitchell v. Dodrill**, 696 F. Supp. 2d 454 (M.D.Pa.2010)

When the plaintiff was placed in the SHU without a basis violated his due process rights and subjected him to retaliation by prison officials while held in the SHU. All the Plaintiff's misconduct were issued while he was held in the SHU without valid reason.

7

The Plaintiffs classification points has been raised and resulted in him being transferred from a FCI (Medium) to a USP (High) institution. To date, the Plaintiff has received no misconducts since his transfer and maintains good team reports. However he is still being subject to the retaliatory acts by the prison administration by way of withholding his incoming and outgoing emails and U.S. postal mail.

**Exhaustion**:

For purposes of the exhaustion requirement, the Plaintiff's has took the necessary steps to prevent his claims to the proper administration for review. The Plaintiff however was prevented by being placed in a position where his outgoing mail was handled by the same staff that was acting in a retaliatory manner since the Plaintiff's placement in the SHU.

The Plaintiff submitted a timely appeal to each of his complaints, they were received and never addressed. See: Exhibit 2. As soon as a prison fails to respond to an appeal within the time prescribed by its own policy it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement. **Shifflett**, 934 F.3d 365

**Relief Sought:**

The Plaintiff is suing the named defendants in their official and their unofficial capacity for the amount of $100,000 each for a total of 2.2 Million Dollars...The Plaintiff is also requesting a monetary value for every day he was held in the SHU which will be established as the civil suit moves forward.

Respectfully submitted:

Leon Stanton       X *Leon Stanton* (signature)

8

Leon Stanton 61918-066
Federal Correctional Complex Allenwood USP
P.O. Box 3000
White Deer, PA 17887








CERTIFIED MAIL
7022 0410 0002 5414 6411

RECEIVED
HARRISBURG, PA
MAY 02 2022
_____ DEPUTY CLE....

United States District Court
For The Middle District of Penn
Clerk of The Court
228 Walnut Street
Harrisburg, PA 17108