# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LEON STANTON,

             Plaintiff

v.

DAVID PAUL, *et al.*,

             Defendants

CIVIL ACTION NO. 1:22-CV-00647

(MEHALCHICK, J.)

## **MEMORANDUM**

Plaintiff Leon Stanton ("Stanton"), a federal inmate in the custody of the Bureau of Prisons ("BOP"), filed this *Bivens*[1] action pursuant to 28 U.S.C. § 1331. (Doc. 1). Named as defendants are Richard Andreuzzi, David Bardo, John Barrett, Troy Bartholomew, Adam Croker, Justin Foura, Matthew Klobe, Andrew Lieu, Jared Menne, Ryan Price, Eric Spotts, Derek Keeney, Dan Trojan, Michael Carvajal, Scott Finley, Dr. Murray, Angelo Jordan, and David Paul.

Presently before the court is defendants' motion (Doc. 29) to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and for summary judgment pursuant to Federal Rule

---

[1] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). A *Bivens* civil rights action asserted under 28 U.S.C. § 1331 is evaluated using the same standards applicable to a 42 U.S.C. § 1983 civil rights action. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975). To state a claim under *Bivens*, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. *See Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

of Civil Procedure 56.[2] The motion will be treated as one for summary judgment, and disposed of as provided in Rule 56, only with respect to the issue of exhaustion of administrative remedies.[3] The remaining claims will be addressed under Rule 12(b). As set forth below, the court will grant defendants' motion (Doc. 29) to dismiss and for summary judgment.

### 1. FACTUAL BACKGROUND & PROCEDURAL HISTORY

At all relevant times, Stanton was housed at the Federal Correctional Institution, Schuylkill, Pennsylvania ("FCI-Schuylkill"). (Doc. 1, at 2). Stanton alleges that, on August 10, 2022, he was placed in the Special Housing Unit ("SHU") based on an email he sent to his wife. (Doc. 1, at 2). The email referenced a lawsuit that Stanton intended to file against Warden Scott Finely. (Doc. 1, at 2). Stanton asserts that the Schuylkill County Sheriff's

---

[2]The motion is filed only on behalf of Richard Andreuzzi, David Bardo, John Barrett, Troy Bartholomew, Adam Croker, Justin Foura, Matthew Klobe, Andrew Lieu, Jared Menne, Ryan Price, Eric Spotts, Derek Keeney, and Dan Trojan. A summons was mailed to all defendants, including Michael Carvajal, Scott Finley, Dr. Murray, Angelo Jordan, and David Paul. However, these five individuals are no longer employed by the BOP, and no waivers of service have been returned by them. As set forth herein, the court will dismiss the claims against defendants Carvajal, Finley, Murray, Jordan, and Paul pursuant to Federal Rule of Civil Procedure 4(m) based on Stanton's failure to properly effectuate service.

[3]On September 18, 2023, the court issued an order apprising the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 38).

Department attempted to serve Warden Finley, but the Special Investigative Supervisor at the prison confiscated the complaint. (Doc. 1, at 3; Doc. 1, at 8).

On August 10, 2020, defendant Klobe allegedly issued an incident report against Stanton charging him with a violation of BOP Disciplinary Code 196.[4] (Doc. 1, at 3). Stanton avers that the incident report was voided, but he remained in the SHU without justification. (Doc. 1, at 3). On November 4, 2020, Stanton was issued another incident report, charging him with violating BOP Disciplinary Codes 203 and 204[5], again relating to the email he sent to his wife. (Doc. 1, at 3). Stanton maintains that he never received any sanctions or review by the Unit Discipline Committee for either incident report. (Doc. 1, at 3).

Stanton alleges that BOP officials placed him in the SHU and issued approximately eleven incident reports against him in retaliation for filing the lawsuit against Warden Finley. (Doc. 1, at 3-4; Doc. 1, at 8). He further alleges that his placement in the SHU violated his right to due process. (Doc. 1, at 8).

The remainder of the complaint consists of the following disjointed allegations.

---

[4]Code 196— "Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act." *See* 28 C.F.R. § 541.3, Table 1; *see also* Inmate Discipline Program (Aug. 2011), at 45, available at: https://www.bop.gov/policy/progstat/5270_009.pdf (last accessed February 13, 2024).

[5]Code 203— "Threatening another with bodily harm[;]" Code 204— "Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing." *See* 28 C.F.R. § 541.3, Table 1; *see also* Inmate Discipline Program (Aug. 2011), at 46, available at: https://www.bop.gov/policy/progstat/5270_009.pdf (last accessed February 13, 2024).

Stanton avers that defendant Lieu made sexually inappropriate comments to him and touched his backside inappropriately. (Doc. 1, at 4).

He alleges that defendants Kroker, Menne, Sports, and Barrett trashed his cell and threw out his legal paperwork. (Doc. 1, at 4).

Defendants Barrett, Menne, and Bartholomew allegedly transported Stanton to a "blin[d] spot" where Barrett rammed his head into the cage, and defendant Kroker threatened to break Stanton's neck and called him derogatory names. (Doc. 1, at 4-5).

Stanton asserts that defendant Trojan opened his legal mail outside of Stanton's presence and defendant Klobe called him derogatory names. (Doc. 1, at 5).

Next, defendant Lieu allegedly placed his hand in Stanton's back pocket, inappropriately touching him and degrading him, and defendant Menning allegedly covered-up defendant Lieu's behavior. (Doc. 1, at 5). Stanton maintains that defendant Kroker harassed him with an unwarranted strip-search and made sexually charged comments in retaliation for filing a complaint against defendant Lieu. (Doc. 1, at 5).

Stanton avers that defendant Barrett had him placed in restraints based on a false statement that Stanton threatened him. (Doc. 1, at 5). While in restraints, Stanton alleges that defendant Foura harassed him by calling him derogatory names, had a riot shield brought in for a restraint check, pressed it on Stanton's head and banged on it with his fist, and wrote Stanton up seven times. (Doc. 1, at 5). He maintains further the defendant Jordan covered-up these actions. (Doc. 1, at 5).

Defendants move for dismissal, and summary judgment, on the following grounds: (1) Stanton failed to exhaust his administrative remedies; (2) sovereign immunity bars the court's subject matter jurisdiction over Stanton's official capacity claims; and (3) even if Stanton had

4

properly exhausted his administrative remedies, his claims are not valid contexts for a *Bivens* claim, he failed to establish the personal involvement of Keeney, Price, Andruzzi, and Bardo, and defendants are protected from liability by sovereign immunity. (Doc. 35). The motion is ripe for resolution.

### 2. RULE 56 MOTION

#### A. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. *Morrison v. United States*, No. 1:20-

CV-01571, 2021 WL 4192086, at *3 (M.D. Pa. Sept. 15, 2021) (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants")).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence

of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## B. STATEMENT OF UNDISPUTED FACTS[6]

### 1. Facts Regarding Stanton

Stanton was housed at FCI-Schuylkill from September 26, 2016 to April 12, 2021. (Doc. 34, at 2, ¶ 2). He is serving a 420-month sentence, plus six years of supervised release, for possession with intent to distribute crack within 1,000 feet of a school and possession of a

---

[6]Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. L.R. 56.1. Unless otherwise noted, the factual background herein derives from defendants' Rule 56.1 statement of material facts. (Doc. 34). Although Stanton filed a brief (Doc. 37) in opposition to defendants' motion, he failed to file a responsive fact statement. As such, the Court will admit as uncontroverted the statement of facts submitted by defendants. *See* L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.")

firearm in furtherance. (Doc. 34, at 2, ¶ 3). Stanton's projected release date is January 30, 2041, via good conduct time release. (Doc. 34, at 2, ¶ 4).

### 2.  Facts Regarding Exhaustion

The BOP's computerized record of Stanton's administrative remedy submissions reveals that he filed forty-seven administrative remedies between August 1, 2020, and January 3, 2023. (Doc. 34, at 2, ¶ 5). The Administrative Remedy Generalized Retrieval document shows the following information—when remedies were received, the issue the remedy sought to address, the status date of the remedy, and the response reason code. (Doc. 34, at 2-3, ¶ 6).

Of the forty-seven administrative remedies that Stanton filed, he only exhausted one—administrative remedy number 1113672-F1, R1, A1—which concerned staff at the United States Penitentiary, Allenwood, searching his cell, which is unrelated to any of the allegations in the instant complaint. (Doc. 34, at 3, ¶ 7). The remaining forty-four remedies filed by Stanton were not properly filed through all levels of the administrative process. (Doc. 34, at 3, ¶ 8).

Stanton filed his last remedy, number 1146223-F1, on December 29, 2022, concerning a complaint regarding confinement in the SHU. (Doc. 34, at 3, ¶ 9). On December 29, 2022, remedy number 1146223-F1 was rejected because it was filed at the wrong level, and Stanton was advised as to the proper filing of a sensitive matter. (Doc. 34, at 3, ¶ 10).

### 3.  Facts Regarding SHU Placement and Use of Force

On August 10, 2020, an Administrative Order was issued confining Stanton to the SHU because his "continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution due to a Violation of Code 196." (Doc. 34, at 3-4, ¶ 11).

On March 1, 2021, Stanton returned from recreation and was taken to the SHU holding cell to be visually searched. (Doc. 34, at 4, ¶ 12). While in the SHU holding cell, Stanton became agitated and disruptive, kicking the cell door and threatening the Lieutenant with assault. (Doc. 34, at 4, ¶ 13). The Use of Force team was assembled to remove Stanton from the cell and place him in soft ambulatory restraints. (Doc. 34, at 4, ¶ 14). Stanton was removed from the cell, visually searched, metal detected, placed in alternative clothing, photographed, medically assessed, and placed in soft ambulatory restraints at 9:35 a.m. (Doc. 34, at 4, ¶ 15). The Warden noted that Stanton was to remain in restraints until he could gain control of his emotions. (Doc. 34, at 5, ¶ 16). No staff or inmate injuries were reported as a result of the calculated use of force/application of restraints. (Doc. 34, at 5, ¶ 17).

There was only one Form 583 Report of Incident (use of force) involving Stanton at FCI-Schuylkill. (Doc. 34, at 5, ¶ 18). On March 1, 2021, a Form 583 Report noted that a use of force team was assembled because staff believed that Stanton was acting disruptively; however, Stanton submitted to restraints without the need for force, and photos and medical assessment show no injuries sustained. (Doc. 34, at 5, ¶ 18). After the calculated use of force, medical staff evaluated Stanton in the SHU, and noted that he had no injuries. (Doc. 34, at 5, ¶ 19).

While in restraints, staff checked on Stanton every fifteen minutes to evaluate his general welfare, behavior, and physical and mental health status. (Doc. 34, at 5-6, ¶ 20). The staff notes of the fifteen-minute restraint checks indicate that Stanton was very agitated and disruptive, yelling and cursing at staff, not responding to questions or orders, pacing in his cell, kicking his bed, and making vulgar gestures toward staff. (Doc. 34, at 6, ¶ 21). The

restraint checks began on March 1, 2021, at 9:35 a.m., and continued until March 2, 2021, at 7:00 a.m. (Doc. 34, at 6, ¶ 22).

While Stanton was restrained, the lieutenant performed two-hour restraint checks to evaluate his general welfare, behavior, and physical and mental health status. (Doc. 34, at 6, ¶ 23). The lieutenant checks began at 9:35 a.m. on March 1, 2021, and ended on March 2, 2021, at 7:00 a.m., when Stanton was noted to have been compliant with orders and was non-argumentative. (Doc. 34, at 6, ¶ 24). On March 2, 2021, at the 3:00 a.m. lieutenant check, it was noted that Stanton was much less agitated, and he was counseled that if he continued to progress, his restraints would be removed. (Doc. 34, at 6-7, ¶ 25). Stanton's leg restraints were removed at 5:00 p.m. on March 2, 2021, and he was further advised that if he continued to progress and remain calm, the full restraints would be removed. (Doc. 34, at 7, ¶ 26).

On March 1, 2021, while Stanton was in restraints, he had eight incident reports issued as a result of his behavior when staff performed restraint checks. (Doc. 34, at 7, ¶ 27). Stanton received disciplinary sanctions for four of the eight incident reports issued on March 1, 2021—numbers 3479037, 3479197, 3479215, 3479236. (Doc. 34, at 7, ¶ 28).

C.  DISCUSSION

Defendants seek an entry of summary judgment based on Stanton's failure to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, *et seq.* (Doc. 35, at 20-25). The PLRA requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be

granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643-44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United States*, 904 F.3d 257, 266-67 (3d Cir. 2018), or when a prison has "rendered its administrative remedies unavailable… when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016); *see also Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019). This is not such a case. To the contrary, the record establishes that Stanton had full and ready access to the administrative remedy process.

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)); *cf. Wilkerson v. United States*, No. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination."). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271 (citations omitted).

The BOP has established a multi-tier system enabling a federal prisoner to seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19. Before seeking formal review, an inmate must attempt to informally resolve the issue with institutional staff by completing a BP-8 form. 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the inmate may present the issue to the Warden within twenty days of the date of the event giving rise to the administrative remedy request by filing a BP-9 form. 28 C.F.R. § 542.14. The Warden has twenty days to respond. 28 C.F.R. § 542.18. An inmate dissatisfied with the Warden's response may submit an appeal on a BP-10 form to the BOP Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). The Regional Director has thirty days to respond to an appeal. 28 C.F.R. § 542.18. If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office, General Counsel, by submitting a BP-11 form within thirty calendar days. 28 C.F.R. § 542.15(a). The Central Office has forty days to respond. 28 C.F.R. § 542.18. No administrative remedy is considered fully exhausted until it is decided on its merits by the Central Office. 28 C.F.R. §§ 541.10-542.19.

Here, Stanton has presented no evidence that he properly exhausted his administrative remedies, that he was prevented in any way from exhausting his administrative remedies, or that FCI-Schuylkill personnel failed to respond to a grievance. In his complaint, Stanton sets forth a conclusory allegation that prison officials failed to respond to his grievance appeals. (Doc. 1, at 9). And in an attempt to refute defendants' argument in favor of summary judgment, Stanton asserts that "this Court has screened my complaint and exhibits and allowed my complaint to advance after the screening process, which confirms that I did." (Doc. 37, at 2). Stanton is mistaken. His bald assertions, standing alone, do not carry his burden of proving "that there was some extraordinary reason he was prevented from

complying with the statutory mandate." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002) (not precedential).  Stanton does not provide any evidence, via an affidavit, declaration, or other statement made under penalty of perjury to support a claim that the administrative remedy process was not available to him. Rather, the record before the court demonstrates that the administrative remedy process at FCI-Schuylkill was consistently available to Stanton, as evidenced by the forty-seven remedies he filed from August 1, 2020 through January 3, 2023. (*See* Doc. 34, at 2, ¶ 5).

In contrast, defendants have presented evidence in the form of an affidavit from BOP attorney Jenifer Knepper and the Administrative Remedy Generalized Retrieval, confirming that Stanton did not exhaust all of his available administrative remedies. (Doc. 34-2, at 2; Doc. 34-2, at 13-37). The record reflects that Stanton filed forty-seven administrative remedies, but only pursued one to the final level of review. (Doc. 34 at 3, ¶ 7; Doc. 34-2, at 31-33). Stanton filed his last administrative remedy on December 29, 2022, number 1146223-F1, regarding his confinement in the SHU. (Doc. 34 at 3, ¶ 9; Doc. 34-2, at 37). On that same date, prison officials rejected the remedy because it was filed at the wrong level, and informed Stanton of the proper procedure for filing a remedy involving a sensitive matter.  (Doc. 34 at 3, ¶ 10; Doc. 34-2, at 37). Stanton failed to follow this directive and, instead, bypassed the inmate grievance system and proceeded to federal court. "[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Stanton's course of action is precisely the conduct that the PLRA administrative exhaustion requirement seeks to curtail. Defendants are entitled to summary judgment based on Stanton's failure to exhaust administrative remedies.

Even had Stanton properly exhausted, his claims are subject to dismissal on the merits, as set forth below.

### 3. RULE 12(B)(1) MOTION

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *CAN v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Defendants argue that Stanton's *Bivens* claims against them in their official capacities are barred by sovereign immunity. (Doc. 35, at 25-26). Sovereign immunity bars any claims brought against the defendants in their official capacities. Specifically, sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "An action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (not precedential); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007) (not precedential).

*Bivens* does not waive sovereign immunity with respect to claims brought against federal employees sued in their official capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S.

61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."). Thus, Stanton's claims against the defendants in their official capacities are barred by sovereign immunity and will be dismissed for lack of jurisdiction. *Lewal*, 289 F. App'x at 516; *Webb*, 250 F. App'x at 471.

### 4. RULE 12(B)(6) MOTION

#### A. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and

15

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded

complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt, 839 F.3d at 347* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting FED. R. CIV. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

B. DISCUSSION

Alternatively, defendants move to dismiss Stanton's retaliation, due process, conditions of confinement, excessive force, and sexual harassment claims on the basis that there is no *Bivens* remedy available for these First, Fifth, and Eighth Amendment claims following the United States Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120 (2017). (Doc. 35, at 30-53). In *Bivens*, the Supreme Court recognized an implied damages remedy for

a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. *See Bivens,* 403 U.S. at 397. Since the *Bivens* decision, the Supreme Court has extended the *Bivens* remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, *see Davis v. Passman,* 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment, *see Carlson v. Green,* 446 U.S. 14, 18-23 (1980).

The *Abbasi* decision invoked by defendants sets forth a two-part test for determining whether a prospective *Bivens* claim may proceed. First, courts must ascertain whether the case presents a "new context." *Abbasi,* 582 U.S. at 139. If the case differs "in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new." *Abbasi,* 582 U.S. at 139. And the meaning of "new context" is "broad." *See Hernandez v. Mesa,* 589 U.S. ——, 140 S. Ct. 735, 743, 206 L.Ed.2d 29 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *See Abbasi,* 582 U.S. at 139-40. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *See Egbert v. Boule,* 596 U.S. 482, 492 (2022) (quoting *Abbasi,* 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *See Egbert,* 596 U.S. at 492 (quoting *Hernandez,* 140 S. Ct. at 743) (internal quotation marks omitted); *Hernandez,* 140 S. Ct. at 743.

The Supreme Court's decision in *Egbert* reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *See Egbert*, 596 U.S. at 483, 491 (quoting *Abbasi*, 582 U.S. at 136; *Hernandez*, 140 S. Ct. at 742-43). *Egbert* clarified that the two-step process laid out in *Abbasi* "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *See Egbert*, 596 U.S. at 492. In other words: if there is "*any* rational reason (even one) to think that *Congress* is better suited" to determine the propriety of a cause of action, then a *Bivens* action cannot proceed. *See Egbert*, 596 U.S. at 496. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even potentially yes, the plaintiff cannot recover under *Bivens*. *See Egbert*, 596 U.S. at 496 (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)).

The court proceeds with *Abbasi's* two-step analysis.

Stanton claims that defendants engaged in the following retaliatory acts for filing a lawsuit against the Warden—unlawfully placing him in the SHU, using excessive force against him and improperly placing him in restraints, forcing him to live in improper conditions of confinement, and sexually harassing and assaulting him. The court construes these claims as raising independent causes of action under the First, Fifth, and Eighth Amendments.

There is no question that Stanton's First, Fifth, and Eighth Amendment claims present new contexts—they are "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 582 U.S. at 139. Stanton's instant claims on their face "bear

19

little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," the contexts previously recognized by the Supreme Court. *Abbasi*, 582 U.S. at 140.

First, the Supreme Court has never recognized a *Bivens* remedy under the First Amendment. *See Bistrian v. Levy*, 912 F.3d 79, 95 (3d Cir. 2018) (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)). Additionally, the Third Circuit has explicitly held that *Bivens* does not extend to a retaliation claim under the First Amendment. *See, e.g., Mack v. Yost*, 968 F.3d 311, 319-25 (3d Cir. 2020) (declining to extend *Bivens* to a First Amendment retaliation claim in the prison workplace assignment context); *Bistrian*, 912 F.3d at 95-96 (declining to extend *Bivens* to a First Amendment retaliation claim in the prison restrictive housing context).

The court next considers Stanton's Fifth and Eighth Amendment claims. Of the three cases in which the Supreme Court has recognized *Bivens* claims, only *Davis* and *Carlson*— involving Fifth and Eighth Amendment claims, respectively—are tenably relevant. In *Davis*, the Court concluded that the Fifth Amendment's Due Process Clause provided a damages remedy to an administrative assistant claiming that a Congressman had discriminated against her on the basis of gender. *See Davis* 442 U.S. at 248-49. In *Carlson*, a prisoner's estate filed suit alleging that prison officials had been fully aware of the prisoner's serious "chronic asthmatic condition" as well as the "gross inadequacy" of medical facilities and prison staff. *See Carlson*, 446 U.S. at 16 n.1. The estate alleged officials failed to provide the prisoner "competent medical attention for some eight hours after he had an asthmatic attack," including an inordinate delay of his transfer to an outside hospital, all of which led to the prisoner's death. *See Carlson*, 446 U.S. at 16 n.1.

Stanton's Fifth Amendment claim for relief regarding his alleged unlawful placement in the SHU is decidedly different from the gender discrimination claim in *Davis*. And Stanton's excessive force, conditions of confinement, and sexual harassment claims are markedly different from the Eighth Amendment inadequate medical care claim recognized in *Carlson*. *See, e.g., Mammana v. Barben*, 856 F. App'x 411 (3d Cir. 2021) (not precedential) (rejecting prisoner's argument that *Carlson* gives footing to Eighth Amendment conditions-of-confinement claim against federal prison officials). While the claims arise under the same constitutional amendment, the Supreme Court has made clear that a common constitutional basis is not enough to link a new *Bivens* theory to an existing *Bivens* context. *See Hernandez*, 140 S. Ct. at 743 (indicating courts must "look beyond the constitutional provisions invoked"). This case alleges different misconduct than *Davis* and *Carlson*, and different legal standards would apply. Thus, Stanton's Fifth and Eighth Amendment claims differ meaningfully from *Davis* and *Carlson*.

The court concludes that Stanton's First, Fifth, and Eighth Amendment claims present new contexts for purposes of *Bivens*.

Because the court concludes that Stanton's claims present new contexts, the court must turn to the second *Abbasi* step and determine whether any special factors are present. In this context, the court asks whether "there are any special factors that counsel hesitation" in extending *Bivens*. *See Hernandez*, 140 S. Ct. at 743 (internal quotation marks and alterations omitted) (quoting *Abbasi*, 582 U.S. at 136). Although courts may consider various special factors, *see Bistrian*, 912 F.3d at 90 (citing *Abbasi*, 582 U.S. at 133-45 at 1856-63), two "are 'particularly weighty': availability of an alternative remedial structure and separation-of-powers concerns," *see Mack*, 968 F.3d at 320 (quoting *Bistrian*, 912 F.3d at 90).

In *Egbert*, the Supreme Court reiterated its prior emphasis on the availability of alternative remedies, *see Egbert*, 596 U.S. at 497-98, further extending the Court's longstanding view that "when alternative methods of relief are available, a *Bivens* remedy usually is not," *see Abbasi*, 582 U.S. at 145 (citing *Bush v. Lucas*, 462 U.S. 367, 386-88 (1983); *Schweiker v. Chilicky*, 487 U.S. 412, 425-26 (1988); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73-74 (2001); *Minneci v. Pollard*, 565 U.S. 118, 125-26 (2012)). The BOP has an alternative remedial structure in place, its administrative remedy program. *See Malesko*, 534 U.S. at 68 (holding that "administrative review mechanisms" can provide "meaningful redress"—even if they do not "fully remedy the constitutional violation"). And *Egbert* makes clear that the question for this court is not whether a *Bivens* damages remedy would be more effective, nor even whether the existing remedy is sufficient. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. The existence of the BOP's administrative remedy process "independently foreclose[s]" a *Bivens* remedy in this new context. *Egbert*, 596 U.S. at 497.

Assuming *arguendo* the BOP's administrative remedy program does not constitute an alternative remedy, the court must still consider whether there are other factors—such as separation-of-powers concerns—that weigh against creating a *Bivens* remedy to fill the void. *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *See Abbasi*, 582 U.S. at 135. Thus, any special-factors assessment must seek to discern whether Congress would want the federal judiciary to impose "a new substantive legal liability" in a particular case. *Abbasi*, 582 U.S. at 136. In *Egbert*, the Supreme Court stressed that "even one" reason to believe the

federal legislature is better equipped to provide a damages remedy means a *Bivens* action cannot proceed. *See Egbert*, 596 U.S. at 496. Congress's silence, particularly when it has already legislated in a given sphere, can be "telling" in this analysis. *See Abbasi*, 582 U.S. at 144. The Supreme Court has suggested that Congress's omission of a "standalone damages remedy against federal jailers" from the PLRA may imply a congressional intent to limit *Carlson's* damages remedy to its context. *See Abbasi*, 582 U.S. at 149. The Third Circuit Court of Appeals has disagreed and opined that Congress's silence in the PLRA does not necessarily signal legislative intent that "a *Bivens* cause of action should not exist at all." *See Bistrian*, 912 F.3d at 93; *see also Mack*, 968 F.3d at 323-24 (quoting *Bistrian*, 912 F.3d at 93). However, the Third Circuit has also observed, "congressional silence on prison litigation can still counsel hesitation in some contexts," particularly when—as here—the alleged mistreatment is "different . . . than that alleged in [*Davis* and] *Carlson*." *Mammana*, 856 F. App'x at 415.

The claims before the court warrant hesitation. The Supreme Court has never extended *Bivens* to the First, Fifth, and Eighth Amendment claims before the court. Based on the foregoing, the court concludes, as many courts have concluded,[7] that special factors weigh

---

[7]*See, e.g., Bistrian v. Levy*, 912 F.3d 79, 96 (3d Cir. 2018) (rejecting an extension of *Bivens* to a federal prisoner's First Amendment retaliation claim and noting that this conclusion "aligns with a strong trend in district courts, post-*Abbasi*, holding that a *Bivens* retaliation claim under the First Amendment should not be recognized"); *Zavala v. Rios*, 721 F. App'x 720, 721-22 (9th Cir. 2018) (not precedential) (declining to extend *Bivens* to inmates' Fifth Amendment due process claims); *Louis-El v. Ebbert*, 448 F. Supp. 3d 428, 439-41 (M.D. Pa. 2020) (same); *Mammana v. Barben*, 856 F. App'x 411, 414 (3d Cir. 2021) (not precedential) (footnote omitted) (plaintiff alleging Eighth Amendment violation for confinement for four days "in a chilled room with constant lighting, no bedding, and only paper-like clothing" did not state a *Bivens* claim, with the Third Circuit noting plaintiff "asks for a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement, a step

against extending *Bivens* to these new contexts.  Therefore, assuming, *arguendo*, that Stanton

properly exhausted his administrative remedies, the court would decline to extend a *Bivens*

remedy to his First, Fifth, and Eighth Amendment claims and would dismiss these claims.[8]

### 5. INSUFFICIENT SERVICE OF PROCESS

Defendants Carvajal, Finley, Murray, Jordan, and Paul, have not been served process.

Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff has ninety days from the date he

filed his complaint to serve the complaint on the defendants. FED. R. CIV. P. 4(m). Upon a

showing of good cause for the failure to serve, the court must extend the time for service; the

court can, at its discretion, extend the time for service even if plaintiff has not shown good

cause for the delay. FED. R. CIV. P. 4(m). The factors a court should consider in evaluating

whether good cause exists are: (1) the reasonableness of the plaintiff's efforts to effect service;

(2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved

for an enlargement of time; and (4) whether the statute of limitations will bar the plaintiff's

---

never taken by the Supreme Court nor any circuit court"); *Hill v. Lappin*, 561 F.Supp.3d 481, 487 (M.D. Pa. 2021) (noting that "courts began to appreciate *Abbasi's* watershed scope, [and] the better-reasoned authority has declined to recognize a *Bivens* remedy for Eighth Amendment conditions-of-confinement and excessive force claims."); *Kalu v. Spaulding*, No. 3:19-CV-1621, 2022 WL 4454352, *4 (M.D. Pa. Sept. 23, 2022) ("[a]n alleged sexual assault is a new context under *Bivens*.").

[8]Because Stanton's claims are not viable under *Bivens*, the court declines to address defendants' arguments as to personal involvement and qualified immunity. *See, e.g., Bistrian*, 912 F.3d at 96 n.25 (3d Cir. 2018) ("Because we conclude that [there is] not a recognized *Bivens* remedy, we again need not address whether any of the defendants are entitled to qualified immunity.").

claims if the action is dismissed. *See MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097-98 (3d Cir. 1995).

In the present matter, Stanton failed to establish good cause. Stanton's complaint was filed on or about May 2, 2022. (Doc. 1). In June of 2002, a summons was issued. (Doc. 7). On September 21, 2022, the waiver of service of summons mailed to defendants Carvajal, Finley, Murray, Jordan, and Paul were returned unexecuted. (Doc. 11). The returned waiver of service of summons forms for defendants Carvajal, Finley, Murray, and Jordan were marked "no longer employed by Federal Bureau of Prisons." (Doc. 11, at 1-4). The returned waiver of service of summons form for defendant Paul was marked "no longer employed in BOP's Northeast Region or as NE Regional Director." (Doc. 11, at 5). Because these defendants were no longer employed by the BOP, they were not able to be properly served.

The court then notified Stanton that the action against defendants Carvajal, Finley, Murray, Jordan, and Paul was subject to dismissal and directed him to show cause why the action against these defendants should not be dismissed pursuant to Rule 4(m). (Doc. 41). In response, Stanton requested the appointment of counsel to assist in locating defendants' whereabouts. (Doc. 42). The court conditionally granted Stanton's request for counsel and referred the matter to the Federal Bar Association's Pro Bono Committee for purposes of obtaining counsel for Stanton. (Doc. 43). The Pro Bono Chair informed the court that a volunteer attorney was not available to represent Stanton. (Doc. 44). Stanton has made no further attempts to serve defendants Carvajal, Finley, Murray, Jordan, and Paul, or to obtain their addresses. And, in general, Stanton's *pro se* status is not good cause to excuse his failure to timely identify and serve this defendant. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir.

2004) (not precedential). Accordingly, the court finds that Stanton lacks good cause for his failure to effectuate service.

If a plaintiff cannot show good cause for his failure to serve a defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995); *see also* FED. R. CIV. P. 4(m).  It is Stanton's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 6, at 2, ¶ 3) (advising Stanton that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

Because Stanton is solely responsible for effecting service upon defendants Carvajal, Finley, Murray, Jordan, and Paul, and has yet to do so, and in light of the court's warning of the possible consequences, including dismissal, the court concludes that dismissal is appropriate under the present circumstances.

### 6.  LEAVE TO AMEND

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the court must grant Stanton leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). The court finds that amendment would be futile because Stanton cannot remedy the legal, jurisdictional, and factual defects in the complaint: that Stanton failed to exhaust the available administrative remedies, that sovereign immunity bars the court's subject matter jurisdiction over the defendants in their official capacities, and that *Bivens* does not extend to the First, Fifth, and Eighth Amendment claims.

26

**7.  CONCLUSION**

The court will grant defendants' motion (Doc. 29) in its entirety. The court will also dismiss the action against defendants Carvajal, Finley, Murray, Jordan, and Paul for insufficient service of process pursuant to Federal Rule of Civil Procedure 4(m).

An appropriate Order will follow.

Date: May 1, 2024                                           BY THE COURT:


*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**